UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COLUMBIA SPORTSWEAR COMPANY, an Oregon corporation, COLUMBIA SPORTSWEAR NORTH AMERICA, INC., an Oregon corporation, and COLUMBIA BRANDS USA, LLC, an Oregon limited liability company,

Plaintiffs,

v.

CHENTAO DING, an individual, and SHAOXING QINGUANG JINCHUKOUYOUXIANGONGSI d/b/a FEIMAHX d/b/a TUNA, a foreign company,

Defendants.

C25-0450 TSZ

CONSENTED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND PERMANENT INJUNCTION

## I. CONSENT ORDER FOR PERMANENT INJUNCTION

The parties having considered the facts and applicable law and having agreed to the entry of this Consented Findings of Fact, Conclusions of Law, and Permanent Injunction, and the parties having stipulated that there is no just reason for not resolving this litigation, it is hereby ordered, adjudged, and decreed as follows:

## II. FINDINGS OF FACT

(a) Plaintiffs Columbia Sportswear Company, Columbia Sportswear North America, Inc., and Columbia Brands USA, LLC (together, "Columbia") are entities organized and existing

under the laws of the State of Oregon, each with their principal place of business at 14375 NW Science Park Drive, Portland, Oregon, 97229.

(b) Defendant Chentao Ding, is a Chinese individual that, based on his filings at the United States Patent and Trademark Office ("PTO"), resides at No. 449 Shuwu, Zhongshu Village, Shaoxing City, Zhejiang China, 312000.

(c) Defendant Shaoxing Qinguang Jinchukouyouxiangongsi d/b/a FeimaHX d/b/a Tuna ("SQJ") is a Chinese individual or company. Defendants Chentao Ding and SQJ shall be collectively referred to as "Tuna" and/or "Defendants."

(d) Columbia brought suit against Defendants under (1) the Lanham Act, 15 U.S.C. § 1125, (2) Washington State common law, alleging unfair competition and trademark infringement, and (3) the Washington State Consumer Protection Act, Chapter 19.86 RCW. Compl. at ⁋⁋ 56–77 (docket no. 1). The Court concludes that federal jurisdiction exists pursuant to 28 U.S.C. § 1338 and 28 U.S.C. § 1367(a).

(e) Columbia manufactures, distributes, and sells the Bahama II short and long sleeved shirts (collectively, "BAHAMA II Shirts"), and is the owner of exclusive rights in the BAHAMA II shirt design. The BAHAMA II shirt design is distinguishable from competitors' offerings and easily identifiable due to its unique combination of: (1) two sets of mirrored breast pockets, (2) the use of, and shape and size of, rectangular flaps over each pocket; (3) a layering effect on the mirrored breast flap-pockets, whereby the smaller of each set of pockets is stitched to the front of each larger breast pocket; (4) the tabs sewn into the center of the front pockets; (5) three holes stitched into the bottom of the breast pockets; (6) the size and placement of the brand tag above the left-hand breast pocket; (7) the size and placement of the rod holder to which the brand tag is affixed; (8) a back vent with a straight flap appearing roughly half-way down the back of the shirt; (9) the size and placement of a triangular label at the bottom middle of the back vent, (10) the use of a turnover shirt collar with button-down collar points; and (11) the curved lower hem in the front and the back (collectively, the "BAHAMA Trade Dress"). A current, short-sleeve iteration of the BAHAMA II Shirt is shown below:

| BAHAMA II SHORT SLEEVE SHIRT Front | BAHAMA II SHORT SLEEVE SHIRT Back |
|---|---|
|  |  |

(f) Columbia has enjoyed protected trademark rights in the BAHAMA Trade Dress since at least 1996 when it published a catalog to the public that offered shirts bearing the BAHAMA Trade Dress for sale:



(g) In 2004, Columbia published another catalog, this one featuring images of the "BAHAMA II SHORT SLEEVE SHIRT™" and "BAHAMA II LONG SLEEVE SHIRT™" which again solidified its protected trademark rights in the BAHAMA Trade Dress.




(h) Columbia's consistent use of the "TM" demarcation in its written materials—to include its product catalogs—informed the consuming public that Columbia had trademark rights in the BAHAMA Trade Dress ("Columbia's Protected Rights").

(i) Tuna has sold shirts identified as "Bahama ii" on its Amazon web store. The Tuna-branded "Bahama ii" shirt is shown below:

**Bahama ii SHORT SLEEVE SHIRT Front**



**Bahama ii SHORT SLEEVE SHIRT Back**



(j) In spite of Columbia's Protected Rights, Tuna sold via online means, including via Amazon.com, shirts that were copied from, and confusingly similar to, Columbia's BAHAMA II Shirts.

(k) Defendants' close copying of Columbia's BAHAMA Trade Dress affirms that Defendants' infringement of Columbia's Protected Rights was willful and deliberate.

(l) Following negotiations in which each of Columbia and Tuna has been represented by its own counsel, the parties agreed to settle, compromise, and resolve this action on the terms and conditions set forth in their Confidential Settlement Agreement.

## III. CONCLUSIONS OF LAW

(a) Defendants' sale and/or offer for sale of "Bahama ii" shirts bearing ornamental design features, trademarks, colors, and logos that are confusingly similar to Columbia's products constitutes unfair competition, false designation of origin, and false advertising under 15 U.S.C. § 1125(a).

(b) Defendants' use of "Bahama ii" in connection with the sale of their products violates 15 U.S.C. § 1125(a) because it is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants and/or their products with Columbia, or as to the origin, sponsorship, or approval of Defendants' products by Columbia.

(c) Defendants' actions, including those described in Paragraphs III(a) and III(b), above, also constitute unfair competition and common law trademark infringement under Washington State law.

(d) Unless enjoined by the Court, Defendants' actions described herein have created and will continue to create a likelihood of confusion, resulting in irreparable injury to Columbia.

(e) Defendants' actions, including those described in Paragraphs III(a) and III(b), above, also violates the Washington State Consumer Protection Act.

(f) Columbia has no adequate remedy at law because their rights in the BAHAMA Trade Dress and the BAHAMA and BAHAMA II trademarks, represent the source, reputation, and goodwill of Columbia's products.

(g) Certain damages caused by Defendants' actions are not susceptible to any ready or precise calculation of damages because such damages involve loss of business opportunities and loss of goodwill. Monetary damages alone thus cannot fully compensate Columbia for the harms caused by Defendants' actions.

(h) Accordingly, Columbia is entitled to a permanent injunction under 15 U.S.C. § 1116 against Defendants' continued use of the infringing trade dress and marks.

(i) If Defendants' actions are not permanently enjoined, Columbia will continue to suffer irreparable harm and injury to its goodwill and reputation.

/ / /

/ / /

/ / /

/ / /

## IV. BASED UPON THE FINDINGS OF FACT AND CONCLUSIONS OF LAW STATED HEREIN, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

A. Tuna, along with its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Tuna, or in concert or participation with Tuna, are permanently enjoined from manufacturing, distributing, selling, marketing, advertising, promoting, or importing into the United States, or authorizing any third party to manufacture, distribute, sell, market, advertise, promote, or import into the United States, any shirts bearing the mark BAHAMA or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the BAHAMA mark.

B. Tuna, along with its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Tuna, or in concert or participation with Tuna, are permanently enjoined from manufacturing, distributing, selling, marketing, advertising, promoting or importing into the United States, or authorizing any third party to manufacture, distribute, sell, market, advertise, promote or import into the United States: (i) the Bahama ii shirt, and; (ii) any other shirt that is a confusingly similar variation or colorable imitation of the BAHAMA Trade Dress.

C. Tuna, along with its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Tuna, or in concert or participation with Tuna, are permanently enjoined from manufacturing, distributing, selling, marketing, advertising, promoting or importing into the United States, or authorizing any third party to manufacture, distribute, sell, market, advertise, promote or import into the United States, any shirt that fails to conform to each and every of the following specifications:

i. There shall be no label, patch, or adornment on the back of the shirt unless any such label, patch, or adornment on the back of the shirt is in the shape of a

rectangle and is not confusingly similar to any element of the BAHAMA Trade Dress.

ii. No shirt shall have a dual-pocket design where each breast pocket on the shirt includes a second, smaller pocket, such that the second, smaller pocket appears to be "in front" or "on top" of the larger, underlying breast pocket.

iii. To the extent there is a narrower pocket in front of larger breast pockets, the top of any such smaller, narrower pocket(s) on the shirt shall not be visible. Tuna is not enjoined from narrower breast pockets where the top of the breast pocket is under the pocket flap for the larger breast pockets.

iv. No shirt shall have a Velcro tab (commonly referred to as a "rod holder") above the left-side breast pocket(s).

v. No shirt shall have a label above the left of the left-side breast pocket.

D. This Court retains exclusive jurisdiction over this action, and the parties consent to venue in this Court, for the purpose of ensuring compliance with this Consented Consented Findings of Fact, Conclusions of Law, and Permanent Injunction.

E. No appeal shall be taken by any party from this Consented Findings of Fact, Conclusions of Law, and Permanent Injunction, the right to appeal from this Consented Findings of Fact, Conclusions of Law, and Permanent Injunction being expressly waived by the parties.

F. In the event that any Party institutes any legal suit, action, or proceeding against any other Party with respect to this Consented Findings of Fact, Conclusions of Law, and Permanent Injunction, the prevailing Party in that suit, action, or proceeding will be entitled to receive, in addition to all other damages to which it may be entitled, the costs incurred by such Party in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

The CLERK is directed to enter judgment consistent with these Findings of fact and Conclusions of Law, to send a copy of the Judgment and these Findings of Fact and Conclusions of Law to all counsel of record, and to administratively CLOSE this case.

Dated: September 15, 2026

Respectfully submitted,

*By: s/ Nika Aldrich*

Nika Aldrich
naldrich@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101
Phone: (206) 622-1711
*Attorneys for Plaintiffs*

*By: s/ Robert Altagen*[1]

Robert Altagen
robertaltagen@altagenlaw.com
Law Office of Robert S. Altagen, APC
1111 Corporate Center Dr., Suite 201
Monterey Park, CA 91754
Facsimile: (323) 268-8742
*Attorneys for Defendants*

IT IS SO ORDERED.

Dated this 18th day of September, 2026.

Thomas S. Zilly
United States District Judge

[1] Electronic */s/* signature applied by Plaintiff's counsel with express written authority and consent of attorney Robert Altagen, received via email dated August 28, 2026. A copy of the August 28, 2026, email has been submitted herewith. See Ex. B to Motion for Permanent Injunction (docket no. 21-2).